# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                   CRIMINAL ACTION NO. 2:15-cr-00077

TROY ANTHONY PERTUSET,

                Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Judgment of Acquittal (the "Motion"). (ECF No. 44.) For the reasons provided herein, the Court **GRANTS** the Motion. (*Id.*)

### *I. Background*

The facts in this case are not in dispute, as the parties stipulated to each of the below facts. (*See* ECF No. 47, Ex. 1.) "On or about April 11, 2005, [Defendant] was convicted of sexual imposition in violation of Ohio Revised Code § 2907.06(A)(4) . . . in the Highland County, Ohio Criminal Court, Greenfield, Ohio, Case Number CRB0500130B." (*Id.* ¶ 1.) "[Defendant] met with his probation officer in Highland County, Ohio, on September 11, 2007." (*Id.* ¶ 2.) "[Defendant] did not register as a sex offender in West Virginia between 2005 and 2009." (*Id.* ¶ 7.)

"On or about July 31, 2009, a five-count Indictment was filed against [Defendant] in Kanawha County Circuit Court charging him with five counts of 3rd degree sexual assault in violation of WV Code § 61-8B-5, Case number 09-F-522." (*Id.* ¶ 6.) "On November 2, 2009,

1

pursuant to a written plea agreement with the State of West Virginia, [Defendant] pled guilty to Counts One and Two of the Indictment." (*Id.*) "On February 4, 2010, [Defendant] was sentenced to a term of 1-5 years imprisonment on each count of conviction, to be served consecutively, with credit for 324 days that he had spent in custody since his arrest on March 17, 2009." (*Id.*) "[Defendant] was released from custody on March 17, 2014, and began serving a term of five years of supervision." (*Id.* ¶ 8.)

"[Defendant] registered on the State of West Virginia Sex Offender Registry" pursuant to the Sex Offender Registration and Notification Act ("SORNA") "on March 19, 2014, and last updated his registry in West Virginia on May 5, 2014." (*Id.* ¶ 9.) "According to [Defendant's] last West Virginia registry update, his address was the Roark Sullivan Lifeway Center, 505 Leon Sullivan Way, Charleston, WV 25301, and his place of employment was Shoney's Restaurant, 116 Kanawha Blvd. East, Charleston, WV 25301." (*Id.* ¶ 10.)

"After updating his status in the West Virginia Registry on May 5, 2014, [Defendant] moved out of the Roark Sullivan Lifeway Center on May 8, 2014 and did not return to his employment with Shoney's." (*Id.* ¶ 11.) "[Defendant] failed to update his WV sex offender registry after May 8, 2014." (*Id.* ¶ 12.)

"On May 14, 2014, a capias was issued for [Defendant's] arrest by the Kanawha County, West Virginia Circuit Court for violation of conditions of his supervision." (*Id.* ¶ 13.) "In February . . . 2015, [Defendant] was arrested in the country of Belize." (*Id.* ¶ 14.) "On March 25, 2015, a complaint was filed in the United States District Court for the Southern District of West Virginia charging [Defendant] with failing to update his sex offender registration in violation of 18 U.S.C. § 2250." (*Id.* ¶ 15.) "On March 25, 2015, [Defendant] was removed from the country of Belize in

2

the custody of law enforcement offices [sic] from that country and flown to Miami, Florida." (*Id.* ¶ 16.) "[Defendant] was immediately arrested by members of the United States Marshal Service as he disembarked the flight from Belize in the custody of the Belizian authorities" and "has remained in . . . custody . . . since his arrest on March 25, 2015." (*Id.*)

On April 7, 2015, the United States filed a single-count Indictment against Defendant. (ECF No. 6.) The Indictment alleges the following:

> In or about May of 2014, in and around Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia, [Defendant], being required to register under [SORNA], and having traveled in interstate or foreign commerce, did knowingly fail to update his registration as required by [SORNA].
>
> In violation of 18, United States Code, Section 2250.

(*Id.* at 1.) On October 1, 2015, Defendant filed a Motion for Bench Trial, (ECF No. 31), which the Court granted by its order entered on October 2, 2015, (ECF No. 33).

The Court conducted a one-day bench trial in this matter on October 22, 2015. (ECF No. 45.) At the beginning of this trial, the Court determined that Defendant knowingly and voluntarily waived his right to a jury trial and found Defendant competent to stand trial. (*See id.*) At the conclusion of the trial, Defendant filed the Motion and moved for an acquittal of the single-count Indictment. (ECF No. 44.) The Government filed its opposition to the Motion on November 15, 2015. (ECF No. 49; *see also* ECF No. 41 (constituting the Government's trial brief in this case).) Defendant has not filed a reply in support of the Motion to date. The Motion is thus fully briefed and ready for disposition.

## II.  Legal Standard

Federal Rule of Criminal Procedure 29 provides, in pertinent part, that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's

motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Stated another way, "[a] judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." *United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003) (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 144 (1986)).

"The test for deciding a motion under Rule 29(a) is 'whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant [the trier of fact] finding that the defendant was guilty beyond a reasonable doubt.'" *United States v. Blankenship*, Criminal Action No. 5:14-cr-00244, 2015 WL 8731688, at *1 (S.D. W. Va. Dec. 9, 2015) (quoting *United States v. McCloskey*, 682 F.2d 468, 473 (4th Cir. 1982)). "Although the United States may rely on inferences and circumstantial evidence, it 'nevertheless must establish proof of each element' of the crime 'beyond a reasonable doubt.'" *United States v. Ismail*, 97 F.3d 50, 55 (4th Cir. 1996) (quoting *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996)). *See generally Burgos*, 94 F.3d at 858 ("To require less of the Government would eviscerate its burden to prove all elements of a crime beyond a reasonable doubt and relieve it of its burden of vigilance in prosecuting crimes—thereby violating bedrock principles of our Anglo-American jurisprudence." (citation omitted)). "If a 'rational trier of fact' can find that the essential elements of a charged offense are supported by the evidence, the motion must be denied." *Blankenship*, 2015 WL 8731688, at *1 (quoting *United States v. Singh*, 518 F.3d 236, 246 (4th Cir. 2008)). "This standard of review is the same whether the trial was before a jury or before the court." *United*

*States v. Witasick*, No. 4:07CR00030–001, 2010 WL 1064735, at *1 (W.D. Va. Mar. 22, 2010) (citations omitted).

### III. Discussion

Defendant argues, in pertinent part, that the Government provided insufficient evidence that he was obligated under 42 U.S.C. § 16913(a) and (c) to update his West Virginia registration, as required for the violation of 18 U.S.C. § 2250 alleged in the Indictment. (ECF No. 44 at 5–10.) The Court first provides background on SORNA and the charge in the instant case, then addresses Defendant's argument.

### A.     Background on SORNA and the Charged Offense

"[T]he federal sex-offender registration laws have, from their inception, expressly relied on state-level enforcement." *Carr v. United States*, 560 U.S. 438, 452 (2010). "[W]hen it initially set national standards for state sex-offender registration programs in 1994, Congress did not include any federal criminal liability." *Id.* Instead, "Congress . . . conditioned certain federal funds on States' adoption of 'criminal penalties'" for individuals who were "required to register under a State program," but "knowingly fail[ed] to so register and keep such registration current." *Id.* (citation omitted). In 1996, "Congress supplemented state enforcement mechanisms by subjecting to federal prosecution any covered sex offender who changes address to a State other than the State in which the person resided at the time of the immediately preceding registration and knowingly fails to register as required." *Id.* at 452–53.

"On July 27, 2006, the Adam Walsh Child Protection and Safety Act of 2006 . . . was signed into law." *United States v. Hatcher*, 560 F.3d 222, 224 (4th Cir. 2009) (citation omitted). "Title I of [this] Act is SORNA," *United States v. Smith*, 528 F. Supp. 2d 615, 616 (S.D. W. Va.

2007), which "establishes a comprehensive regulatory scheme to track and provide community notification regarding convicted sex offenders," *United States v. Price*, 777 F.3d 700, 703 (4th Cir. 2015). Congress enacted SORNA "for the purpose of 'protect[ing] the public from sex offenders and offenders against children' through the creation of a 'comprehensive national system for the registration of those offenders.'" *Hatcher*, 560 F.3d at 224 (alteration in original) (quoting 42 U.S.C. § 16901). *See generally Price*, 777 F.3d at 709 (noting that Congress passed SORNA in response "to . . . vicious attacks by violent predators" (quoting 42 U.S.C. § 16901)); *United States v. Collins*, 773 F.3d 25, 31 (4th Cir. 2014) ("Congress enacted SORNA to protect the population at large rather than the victim of the underlying crime." (citation omitted)). In passing SORNA, "Congress noted that the earlier federal efforts to create sex offender registries state-by-state had left gaps in the system, resulting in an estimated 100,000 unaccounted for sex offenders." *United States v. Under Seal*, 709 F.3d 257, 264 (4th Cir. 2013) (citing H.R. Rep. No. 109-218 (2005), 2005 WL 2210642); *see also United States v. Bridges*, 741 F.3d 464, 467 (4th Cir. 2014) (noting that Congress created the "comprehensive national system for the registration of [sex] offenders" to "address the significant number of missing sex offenders" (alteration in original) (citations omitted)). "With SORNA, Congress sought to fill those gaps and put in place a national sex offender registration system for the protection of the public." *Under Seal*, 709 F.3d at 264 (citation omitted).

Under SORNA, "[s]ex offenders are required to provide several types of information for inclusion in the sex offender registry, including their names and aliases, Social Security numbers, addresses of residences, names and addresses of places of employment, names and addresses of educational institutions in which the offenders are enrolled, and vehicle information." *Hatcher*,

560 F.3d at 225 (citing 42 U.S.C. § 16914(a)). "Each jurisdiction must make public the contents of its sex offender registry, including each registrant's name, address, photograph, criminal history, and status of parole, probation, or supervised release." *Under Seal*, 709 F.3d at 261 (citing 42 U.S.C. §§ 16914(b) & 16918(a)).

"In addition to detailing the kinds of information that must be included in the sex offender registry, SORNA dictates when and how convicted sex offenders must register." *Hatcher*, 560 F.3d at 225 (42 U.S.C. § 16913). *See generally United States v. Gould*, 568 F.3d 459, 465 (4th Cir. 2009) ("[T]he requirement imposed on individuals to register is independent of the requirement imposed on the States to implement the enhanced registration and notification standards of SORNA."). "As a general matter, sex offenders must register and keep their registration current in each jurisdiction where they reside, work, or attend school." *Hatcher*, 560 F.3d at 225 (citing U.S.C. § 16913(a)). "Following the initial registration, sex offenders must keep their registration current by notifying at least one jurisdiction where they are required to register of all changes of name, residence, employment, or student status within three days of the change." *Id.* (citing 42 U.S.C. § 16913(c)). "The offender must 'appear in person, allow the jurisdiction to take a current photograph, and verify the information in each registry.'" *Under Seal*, 709 F.3d at 261 (quoting 42 U.S.C. § 16916)).

"Although SORNA 'is a non-punitive, civil regulatory scheme, both in purpose and effect,' noncompliance with the statute can result in criminal prosecution . . . ." *Price*, 777 F.3d at 704 (citation omitted). "To enforce its registration provisions, SORNA includes 18 U.S.C. § 2250(a)," *Hatcher*, 560 F.3d at 225, which "criminalize[s] the failure to register," *Gould*, 568 F.3d at 461 (citation omitted), or "update a registration," 18 U.S.C. § 2250(a)(3).

In the instant matter, the Indictment alleges that, "[i]n or about May of 2014, in and around Charleston, Kanawha County, West Virginia, . . . [Defendant], being required to register under [SORNA], and having traveled in interstate or foreign commerce, did knowingly fail to update his registration as required by [SORNA]" in violation of 18 U.S.C. § 2250. (ECF No. 6 at 1.) Section 2250 provides the following, in pertinent part:

> Whoever - -
>
> (1) is required to register under [SORNA];
>
> (2)(A) is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act . . .

shall be guilty of an offense against the United States. 18 U.S.C. § 2250(a). Section 2250(a) "makes it a federal felony . . . for a person who is required to register under SORNA to travel in interstate [or foreign] commerce and knowingly fail to register or update his sex offender registration." *Hatcher*, 560 F.3d at 225. "[T]o establish a criminal violation of" Section 2250(a), "the government [must] show (1) that [the defendant] was required to register under 42 U.S.C. § 16913(a) as a sex offender . . . ; (2) that he was convicted of an offense [under the laws enumerated in Section 2250(a)(2)(A)] that made him a sex offender, *or* that he traveled in interstate [or foreign] commerce; and (3) that he 'knowingly' failed to register [or update his registration] as required by § 16913(a)." *Gould*, 568 F.3d at 463 (citation omitted); *see also Hatcher*, 560 F.3d at 225 (stating that Section 2250(a) "makes it a federal felony . . . for a person who is required to register under

8

SORNA to travel in interstate commerce and knowingly fail to register or update his sex offender registration"). *See generally Carry v. United States*, 560 U.S. 438, 451 (2010) ("Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA's registration requirements: any person who is a sex offender by reason of a conviction under Federal law . . . , the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States, and any other person required to register under SORNA who travels in interstate or foreign commerce . . . ." (citations omitted)).

**B.     Defendant's Alleged Obligation to Update His West Virginia Registration**

The Government's theory in this case—as provided in the Indictment and its briefing—is that Defendant was obligated under 42 U.S.C. § 16913(a) and (c) to update his sex-offender registration in West Virginia because Defendant changed his residence and employment—and left this State to be found months later in Belize—thereby making West Virginia a "jurisdiction involved" under Section 16913(a). (*See* ECF No. 6 (the Indictment); ECF No. 41 at 6 (the Government's trial brief); ECF No. 49 at 1–17 (the Government's opposition to the Motion).) Defendant asserts that he was not obligated under 42 U.S.C. §§ 16913(a) and (c) to update his West Virginia sex-offender registration following his change of residence and employment in May of 2014. (*See* ECF No. 44 at 5–10.) Specifically, Defendant argues that "[a] sex offender who moves from one jurisdiction to another . . . is not obligated under SORNA to inform the former jurisdiction of the change" and, "[i]nstead, the offender has an obligation to update his registration

in the arriving jurisdiction unless that jurisdiction is beyond SORNA's reach."[1] (*Id.* at 6.) For the

following reasons, the Court agrees with Defendant's position.[2]

"The Court's analysis, of course, must begin with the statutory text." *United States v.

Bailey*, Criminal Action No. 2:13–cr–00094, 2014 WL 534193, at *5 (S.D. W. Va. Feb. 10, 2014)

(citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 173 (1994));

*see also United States v. Bly*, 510 F.3d 453, 460 (4th Cir. 2007) ("The starting point for any issue

of statutory interpretation . . . is the language of the statute itself." (citation omitted)). "In that

regard, [a court] must first determine whether the language at issue has a plain and unambiguous

meaning with regard to the particular dispute." *Ignacio v. United States*, 674 F.3d 252, 254 (4th

Cir. 2012) (citation omitted). "If the plain language is unambiguous, [a court] need look no

---

[1] "A prerequisite to SORNA's registration requirement—and to criminal penalties under § 2250(a)—is that the defendant has been convicted of a sex offense." *United States v. Price*, 777 F.3d 700, 704 (4th Cir. 2015) (citations omitted). Section 16911(5)(A) of Title 42 defines the term "sex offense" as, in pertinent part, "a criminal offense that has an element involving a sexual act or sexual contact with another."

The parties stipulated that "[o]n or about April 11, 2005, [Defendant] was convicted of sexual imposition in violation of Ohio Revised Code § 2907.06(A)(4), a sex offense requiring registration under SORNA." (ECF No. 47, Ex. 1 ¶ 1.) For purposes of the present analysis, the Court assumes—without deciding—that the parties are correct that an offense under Ohio Revised Code § 2907.06(A)(4) constitutes a "sex offense" under 42 U.S.C. § 16911(5)(A).

[2] On November 6, 2015, the Supreme Court granted certiorari in *Nichols v. United States*, No. 15–5238, to address the following question:

> Whether 42 U.S.C. § 16913(a) requires a sex offender who resides in a foreign country to update his registration in the jurisdiction where he formerly resided, a question that divides the courts of appeals?

*See* 136 S. Ct. 445 (2015) (granting certiorari as to question 1 in the petition); *see also* Petition for Writ of Certiorari, *Nichols v. United States*, 2015 WL 6774577, at *i (No. 15–5238) (providing the petitioner's questions presented). On January 25, 2016, this Court entered an order directing the parties to file briefing addressing whether the Court should rule on the Motion, or hold this matter in abeyance pending the Supreme Court's decision in *Nichols*. (ECF No. 50.) The Government responded by requesting that the Court hold the Motion "in abeyance pending the outcome of *Nichols*." (ECF No. 51 at 2.) Defendant, on the other hand, requests that the Court "proceed to rule on [the Motion] rather than await further proceedings in" *Nichols*. (ECF No. 52 at 1; *see also* ECF No. 53 (constituting Defendant's corrected response to the Court's January 25, 2016 order, in which he "continues to assert that this Court should proceed to rule on his [Motion]").)

As discussed herein, the Court finds that the Motion is meritorious. The Court therefore also finds that Defendant would suffer substantial prejudice by the Court holding the Motion in abeyance and the interest of justice mandate that the Court rule on the Motion at this time.

further." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015) (citation omitted); *cf. Ignacio*, 674 F.3d at 254 (stating that a court's "inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent"). "On the other hand, if the text of a statute is ambiguous, [a court] look[s] to 'other indicia of congressional intent such as the legislative history' to interpret the statute." *Lee*, 802 F.3d at 631 (quoting *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 53 (4th Cir. 2011)).

"A statute is ambiguous if it 'lends itself to more than one reasonable interpretation.'" *Id.* (quoting *Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 248 (4th Cir. 2004)). A court "determine[s] the 'plainness or ambiguity of statutory language . . . by reference to the language itself, . . . the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.* (second and third alterations in original) (quoting *Yates v. United States*, 135 S. Ct. 1074, 1081–82 (2015)).

As noted above, "Section 16913 of Title 42 of the United States Code sets forth the registration requirements for sex offenders." *Bailey*, 2014 WL 534193, at *6. Section 16913(a) provides the "general" registration requirement and states, in relevant part, that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." *See generally* 42 U.S.C. § 16911(13) (defining the term "resides" for purposes of SORNA as "the location of the individual's home or other place where the individual habitually lives"); *id.* § 16911(12) (defining the term "employee" for purposes of SORNA as "includ[ing] an individual who is self-employed or works for any other entity, whether compensated or not"). "Sub-section (c) [of Section 16913], which is titled '[k]eeping the registration current,' addresses the procedure . . . when an offender,

who has registered, later changes his name, residence, employment, or student status." *Bailey*, 2014 WL 534193, at *6. Section 16913(c) states the following, in its entirety:

> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

*Cf. United States v. DeJarnette*, 741 F.3d 971, 984 (9th Cir. 2013) ("A violation of the keeping-current requirement occurs when an offender fails to update his registration within '3 business days after each [enumerated] change . . . .'" (quoting 42 U.S.C. § 16913(c))).

Defendant argues that "the Government has failed to prove that [Defendant] had an obligation to update his registration in West Virginia" under Section 16913(a) and (c) because "[t]he Government has presented no evidence that [Defendant] remained in West Virginia after May 8, 2014, nor any evidence that he was in another 'jurisdiction' as defined by SORNA." (ECF No. 44 at 9.) In its responsive briefing, the Government asserts that this statutory language requires "a sex offender [to] update his registration in a jurisdiction involved when he changes his residence" or employment status and West Virginia remained a "jurisdiction involved" for purposes of Defendant's obligations under SORNA following these triggering events. (ECF No. 49 at 16.) The focus of the parties' disagreement is thus whether West Virginia remained a "jurisdiction involved" under Section 16913(a) and (c) after Defendant abandoned his residence and did not return to his employment in May of 2014.

The Fourth Circuit has not directly addressed whether a jurisdiction remains a "jurisdiction involved" for purposes of 42 U.S.C. § 16913(a) and (c) when an update-triggering event occurs, but the offender leaves the jurisdiction within the three-day window provided in Section 16913(c).

12

However, this Court recently addressed this issue in *United States v. Bailey* and stated the following regarding the plain meaning of Section 16913(c) and its incorporate reference to Section 16913(a):

> As is plain, there is *nothing* in [Section 16913(c)] that requires a sex offender who has re-located to a new jurisdiction to notify the authorities from the state that he left (unless, of course, if he were to later return to the former jurisdiction and take up residence, attend school, or become an employee). The plain language of § 16913(c) requires [a defendant] to keep his registration current in "at least one" of three possible places, that is, where he: (1) resides; (2) is an employee; and (3) is a student. After [a defendant] move[s] to [a new jurisdiction] and no longer reside[s] in [the former jurisdiction], the only jurisdiction that [meets] the requirements of § 16913(c) [is the new jurisdiction].

2014 WL 534193, at *6; *cf. Carr v. United States*, 560 U.S. 438, 449 (2010) (analyzing the statute that is the subject of the alleged offense here—18 U.S.C. § 2250—and stating that "a statute's 'undeviating use of the present tense' [is] a 'striking indic[ator]' of its 'prospective orientation'" (second alteration in original) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59 (1987))). *See generally United States v. Hilton*, 701 F.3d 959, 966 (4th Cir. 2012) ("Criminal statutes are to be strictly construed and should not be interpreted to extend criminal liability beyond that which Congress has 'plainly and unmistakenly' proscribed." (citation omitted)). The Court also "reject[ed] the Government's contention that [a defendant's] criminal culpability includes a duty to notify [the former jurisdiction] of his change in residence after he relocate[s] to [a new jurisdiction]." *Bailey*, 2014 WL 534193, at *10. Other courts have similarly taken the position that a sex offender is not obligated under Section 16913(a) and (c) to update their registration after departing a jurisdiction and no longer residing, working, or going to school in that jurisdiction. *See United States v. Lunsford*, 725 F.3d 859, 861–62 (8th Cir. 2013) ("There is . . . no textual basis for requiring an offender to update his registration in a jurisdiction where he

formerly 'resided,' and where he is not currently an employee or student. [The former jurisdiction] was not a 'jurisdiction involved' after [the defendant] changed his residence to somewhere in the Philippines, so [the defendant] was not required by [SORNA] to update the [former jurisdiction's] registry."); *United States v. Branch*, Criminal Action No. 4:15cr25, ECF No. 41 at 6 (E.D. Va. June 23, 2015) ("The plain language of § 16913(c) requires [the defendant] to keep his registration current in 'at least one' of three possible places, where he: (1) resides; (2) is an employee; and (3) is a student. After [the defendant] moved to [the new jurisdiction] and no longer resided in [the former jurisdiction], the only jurisdiction that met the requirements of § 16913(c) was [the new jurisdiction]."); *see also DeJarnette*, 741 F.3d at 984 (rejecting the Government's argument that a jurisdiction remains a "jurisdiction involved" when the defendant no longer resides in that jurisdiction).

In addition to the plain meaning of the statute, the Court's ruling in *Bailey* is further supported by the historical development of the federal registration requirement. *Cf. Waldburger v. CTS Corp.*, 723 F.3d 434, 450 (4th Cir. 2013) (finding that the statute had a plain meaning and the court therefore "need not look to legislative history," but nonetheless electing to analyze the legislative history of the statute), *rev'd on other grounds by CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014). In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (the "Jacob Wetterling Act"), "which provided federal funding to States that enacted sex offender registration laws." *United States v. Gould*, 568 F.3d 459, 464 (4th Cir. 2009) (citing 42 U.S.C. § 14071). The Jacob Wetterling Act provided the following regarding a sex offender's registration requirements when they depart a jurisdiction:

> A person who has been convicted of an offense which requires registration under this section shall register the new address with a designated law enforcement

> agency *in another State to which the person moves* not later than 10 days after such person establishes residence in the new State, *if the new State has a registration requirement.*

Pub. L. No. 103-322, 108 Stat. 1796, 2038 (1994) (emphasis added) (codified at 42 U.S.C. § 14071(b)(5)). This registration language specified that a sex offender is required to register "in another State to which the person moves," but only "if the new State has a registration requirement." *Id.*

> In 1997, Congress amended this registration language to provide the following:

> A person who has been convicted of an offense which requires registration under this section and who moves to another State, shall report the change of address to the responsible agency *in the State the person is leaving*, and shall comply with any registration requirement in the new State of residence. The procedures of *the State the person is leaving* shall ensure that notice is provided promptly to an agency responsible for registration in the new State, if that State requires registration.

Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998 (the "1997 Act"), Pub. L. No. 105-119, 111 Stat. 2461 (1997) (emphasis added) (codified at 42 U.S.C. § 14071(b)(5)). This language explicitly provided that an offender was required to notify the jurisdiction "the person is leaving" and that the procedures of this departed state "shall ensure that notice is provided" to the new state. *Id.*

> In 2006, Congress again amended the registration-requirement language with the passage of the Adam Walsh Child Protection and Safety Act of 2006, which included SORNA. Pub. L. No. 109-248, 120 Stat. 587 (2006) (codified at 42 U.S.C. § 16913). However, unlike the registration language in the 1997 Act, Congress elected to omit from SORNA any language indicating that a sex offender has a duty to register or update their registration in a jurisdiction they are departing. *See* 42 U.S.C. § 16913(a) & (c). Additionally, Congress chose to omit the language from the 1997 Act placing the burden on the departed state's "procedures" to provide notice to the new state. *See*

15

*id.* § 16913(c). Instead, SORNA provides only that a jurisdiction where the offender "appear[s] in person . . . . shall immediately provide th[e] [enumerated] information to all other jurisdictions in which the offender is required to register." *Id.* Thus, SORNA removed explicit language from the 1997 Act pertaining both to an offender's duty to update their registration in the former jurisdiction and the burden of the former jurisdiction to notify the new jurisdiction. *See id.* § 16913(a) & (c).

Congress's decision to omit these specific references to an offender's former jurisdiction is striking and indicates that Congress elected to eliminate the updating and registration requirement for former or departed jurisdictions. *See, e.g.*, *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." (citations omitted)); *Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir. 1995) ("When the wording of an amended statute differs in substance from the wording of the statute prior to amendment, we can only conclude that Congress intended the amended statute to have a different meaning." (citation omitted)). *See generally Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) ("Certainly, Congress may amend a statute to establish new law, but it also may enact an amendment 'to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases.'" (quoting *United States v. Sepulveda*, 115 F.3d 882, 885 n.5 (11th Cir. 1997))). In other words, Congress's substantive alteration to the reporting procedures in SORNA is indicative of its intent to return to the requirement that the offender only report to their new jurisdiction, as previously provided in the pre-1997 Jacob Wetterling Act. *Cf.* Jacob Wetterling Act, Pub. L. No. 103-322, 108 Stat. 1796, 2038 (1994) (codified at 42 U.S.C. § 14071(b)(5)) (providing the pre-1997 requirement that "[a] person who has been convicted of an offense which requires registration shall register . . . with a[n] . . . agency *in another State to which the person moves*" (emphasis

16

added)). Indeed, the House report that accompanied SORNA supports this interpretation and specifically notes that, after an offender moves to a new jurisdiction, the burden is on the *new* jurisdiction—*not* the former jurisdiction—to notify other jurisdictions of an offender's change in residence, employment, or student status. *See* H.R. Rep. No. 109-218 (2005), 2005 WL 2210642 ("[I]f the sex offender either moves to a new State, works in a new State, or attends school in a new State, *the new State is required to notify the other State* that the sex offender is doing so in that State." (emphasis added)). The Court therefore finds that the historical development of the federal registration requirement supports its ruling in *Bailey* that a defendant who moves to a new jurisdiction is required to register in that new jurisdiction, but not in the offender's former jurisdiction.

In its opposition to the Motion, the Government urges the Court to reconsider its opinion in *Bailey* based on unpublished opinions from the Fourth Circuit and a district court in this Circuit, as well as numerous out-of-circuit opinions. (*See* ECF No. 49 at 2–16.) Each of the Government's cited cases fall into one of two categories. As to the first category of cases, some of the Government's proffered authorities discuss the registration and updating requirements in the context of a venue analysis. *See United States v. Snyder*, 611 F. App'x 770, 772 (4th Cir. 2015) ("[The defendant's] offense necessarily involved more than one district because it required interstate travel, beginning when he moved from West Virginia to North Carolina, which gave rise to his obligation to register in either state, and ending when he failed to register in either state. Thus, venue in West Virginia was proper." (citing 42 U.S.C. § 16913(c))); *United States v. Lewis*, 768 F.3d 1086, 1088–96 (10th Cir. 2014) (analyzing the issue of venue and holding that "venue for a § 2250 violation can lie in the departure district"); *United States v. Leach*, 639 F.3d 769, 772

17

(7th Cir. 2011) (stating that venue was proper in both the former jurisdiction and the new jurisdiction); *United States v. Snyder*, Criminal No. 2:13–CR–48, 2014 WL 1408066, at *5 (N.D. W. Va. Apr. 11, 2014) ("Given this Court's construction of [42 U.S.C. § 16913], it is clear that venue is proper in the Northern District of West Virginia."). However, the issue of venue is distinct from the determination of criminal liability. Indeed, as the Court found in *Bailey*, venue may be proper in a defendant's former jurisdiction at the same time that a defendant has no criminal liability for failing to update his registration in that former jurisdiction. *United States v. Bailey*, Criminal Action No. 2:13–cr–00094, 2014 WL 534193, at *10 (S.D. W. Va. Feb. 10, 2014) (ruling that venue was proper in this District, but "reject[ing] the Government's contention that [the defendant's] criminal culpability include[d] a duty to notify West Virginia of his change in residence after he relocated to Columbus, Ohio"). The Court is thus not persuaded by the Government's mixing of cases relating to venue with those pertaining to criminal liability for a failure to update sex-offender registration, as required by 42 U.S.C. § 16913(a) and (c). Instead, the Court finds that these venue-related cases are inapposite in the instant criminal-liability analysis.[3] *See United States v. Branch*, Criminal Action No. 4:15cr25, ECF No. 41 at 9 (E.D. Va. June 23, 2015) (distinguishing venue and criminal liability in the context of a failure-to-update analysis under 42 U.S.C. § 16913(c)).

---

[3] In its opposition to the Motion, the Government also discusses the Fourth Circuit's unpublished opinion in *United States v. Bruffy*. (ECF No. 49 at 9–10 (discussing 466 F. App'x 239 (4th Cir. 2012)). In *Bruffy*, the Fourth Circuit affirmed the defendant's conviction in the Eastern District of Virginia where he left Florida and habitually lived in Virginia, but failed to either register in Virginia or update his registration in Florida. *See* 466 F. App'x at 245–46.

      The Court finds that *Bruffy* is not persuasive in the instant analysis. The *Bruffy* court affirmed the defendant's conviction in his *new jurisdiction* (Virginia) and not his former jurisdiction (Florida). *See id.* However, in the instant matter, the Indictment alleges that Defendant is criminally culpable for failing to update his registration in his former jurisdiction. (*See* ECF No. 6.) The *Bruffy* decision is therefore inapplicable to the instant matter.

The Court is similarly not persuaded by the second category of the Government's cited cases, which consist of additional out-of-circuit authorities. (*See* ECF No. 49 at 4–14.) These out-of-circuit cases either do not address the plain meaning of the present-tense language in Section 16913(a) and (c), *see United States v. Van Buren*, 599 F.3d 170, 173–75 (2d Cir. 2010) (analyzing the term "change" in Section 16913(c) and the legislative history of SORNA and concluding "that SORNA requires a convicted sex offender to update his registration information in person upon terminating his current residence with no intention of returning, even if the sex offender has not yet established a new residence"); *United States v. Whaley*, 577 F.3d 254, 261 (5th Cir. 2009) (analyzing whether Section 16913 is constitutional under the Commerce Clause and concluding "that requiring sex offenders to register both before and after they travel in interstate commerce . . . is 'reasonably adapted' to the goal of ensuring that sex offenders register and update previous registrations when moving among jurisdictions" (citations omitted)), or reach conclusions regarding this statutory language that this Court finds are not supported by the plain meaning of Section 16913 or the historical development of the federal registration requirements for sex offenders, *see United States v. Nichols*, 775 F.3d 1225, 1230 (10th Cir. 2014) (finding that the Tenth Circuit's opinion in "*Murphy* [was] . . . controlling," the defendant "abandoned his residence in Kansas" by "boarding the plane to the Philippines," and "[t]his change in residence triggered a registry obligation in Kansas" (citing *United States v. Murphy*, 664 F.3d 798 (10th Cir. 2011))), *cert. granted in part*, 136 S. Ct. 445 (2015); *Murphy*, 664 F.3d at 804 ("Utah was a jurisdiction involved for [the defendant] because he was still habitually living there when he abandoned his . . . residence. In other words, Utah was a 'present-tense' jurisdiction (i.e., a jurisdiction that *is* involved, not a jurisdiction that *was* involved) when [the defendant's] reporting obligation

arose."); *Carr v. United States*, No. 2:13–00091, 2014 WL 655382, at *5 & n.3 (M.D. Tenn. Feb. 20, 2014) (denying the petitioner's motion under 28 U.S.C. § 2255 on the grounds that the court was "not persuaded that the Sixth Circuit would adopt" a holding "that a defendant need not update registration when he leaves a U.S. state to establish a new residence in a foreign country," or "require such a holding to be applied retroactively" if "the Sixth Circuit were to adopt such a holding in a future case"). *See generally Nichols*, 775 F.3d at 1230 (declining to address the defendant's arguments regarding the present-tense language in Section 16913(a) and (c) and the Eighth Circuit's opinion in *Lunsford*—"[r]egardless of the merits of these arguments"—because the panel was "bound by the majority opinion in *Murphy*" and found the *Murphy* opinion "controlling"). The Court therefore declines the Government's invitation to contravene its previous decision in *Bailey* based on these cited authorities.

The Government further argues that the Court should reconsider its *Bailey* decision in light of the policy objectives of SORNA. (ECF No. 49 at 11–12.) In particular, the Government notes that "SORNA was designed to create a consistent, seamless network to track sex offenders who travel throughout the country." (*Id.* at 11.) The Government argues that "[t]o read SORNA as to have no obligation to notify the jurisdiction where a sex offender habitually lives at the time a residence is abandoned would create an easy opportunity for offenders to slip through the cracks by choosing to live a transient lifestyle." (*Id.*)

The Court is not persuaded by this argument. "[T]ransient sex offenders who lack a fixed residence usually will 'habitually live' somewhere," such as a particular area of a city. *United States v. Lunsford*, 725 F.3d 859, 862 (8th Cir. 2013). If that jurisdiction is the same as the offender's previous fixed residence, then the offender habitually lives in that jurisdiction and the

20

offender must update their registration in that jurisdiction. *See, e.g.*, *United States v. Bruffy*, 466 F. App'x 239, 244–46 (4th Cir. 2012) (stating that an offender who changes their residence and becomes "transient in a defined jurisdiction" habitually lives in that jurisdiction and must register or update their registration to reflect that change in residency); *United States v. Voice*, 622 F.3d 870, 875 (8th Cir. 2010) ("Sex offenders who lack fixed abodes are nevertheless required to register in the jurisdictions in which they reside . . . ." (citation omitted)). Similarly, if the offender elects to lead an itinerant lifestyle and habitually live in a new jurisdiction, then he must register in that new jurisdiction. *See, e.g.*, *Snyder*, 2014 WL 1408066, at *3 (noting that the *Bruffy* court "rejected the argument that a transient who moves to another state need not register in the new state until he establishes a permanent residence" (citing *Bruffy*, 466 F. App'x at 245–46)). As such, an offender leading a transient lifestyle does not pose a risk of slipping through the cracks, so long as they habitually live in a covered jurisdiction even for a scant matter of weeks. *See, e.g.*, *Lunsford*, 725 F.3d at 862–63 ("SORNA's requirement that a sex offender register in the jurisdiction where he 'habitually lives' typically should ensure that a sex offender who moves from one jurisdiction to another is required to register in the jurisdiction to which he moves, even if he 'resides' at a park bench or on a group of street corners."); *see also Bruffy*, 466 F. App'x at 244 (finding that the defendant habitually lived in a jurisdiction where he "was transient in a defined jurisdiction" for a month).

The Court recognizes that it may be possible for an offender to evade SORNA's requirements by constantly moving and never habitually living in a covered jurisdiction. However, the Court finds that the present-tense language in Section 16913(a) and (c) remains dispositive on this issue and forecloses the application of the update requirement to those individuals. *See*

21

*Lunsford*, 725 F.3d at 863 ("If . . . there is still a hole in the law that permits a particular transient to avoid registration, then it is a product of the statutory text that we cannot repair."). To the extent this constitutes a loophole in the application of SORNA, it is for Congress—and not this Court—to amend the statutory language to encompass these hypothetical transient offenders. *See, e.g.*, *Jones v. Bock*, 549 U.S. 199, 216 (2007) ("'Whatever temptations of statesmanship of policy-making might wisely suggest,' the judge's job is to construe the statute—not to make it better." (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 533 (1947))); *United States v. Goldenberg*, 168 U.S. 95, 103 (1897) ("No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute.").

Based on the plain meaning of Section 16913(a) and (c) and the historical development of the statutory language pertaining to the federal sex offender registration requirement, the Court affirms its ruling in *Bailey*—namely, that after a defendant moves to a new jurisdiction and no longer resides in their former jurisdiction, "the only jurisdiction that [meets] the" registration or updating "requirements of 16913(c)" is the new jurisdiction. *United States v. Bailey*, Criminal Action No. 2:13–cr–00094, 2014 WL 534193, at *6 (S.D. W. Va. Feb. 10, 2014); *see also Murphy*, 664 F.3d at 806–07 (Lucero, J., dissenting) (arguing that the defendant's former jurisdiction "was not a 'jurisdiction involved'" following the defendant's "change in residence" and asserting that the *Murphy* majority "impermissibly rejects the statutory definition of 'resides'" and "avoids a plain test reading of the statute by giving two different meanings to the defined term 'resides'").

The Court now turns to the allegations in the instant matter. The Indictment alleges that Defendant knowingly failed to update his sex-offender registration "[i]n or about May of 2014, in

and around Charleston, Kanawha County, West Virginia." (ECF No. 6 at 1.) However, the facts in this case provide only that Defendant last updated his West Virginia registration on May 5, 2014, moved out of his residence on May 8, 2014, did not return to his employment after this date, and was eventually arrested in Belize in February of 2015. (ECF No. 47, Ex. 1 ¶¶ 11–14.) The facts do not provide that Defendant was in West Virginia after the relevant changes to his residency or employment. (*See* ECF No. 47, Ex. 1.) Indeed, there is no indication, whatsoever, that Defendant was present in West Virginia in any capacity after this date, such that he continued to reside, work, or go to school in this State. (*See id.*); *cf.* 42 U.S.C. § 16913(a) (providing that "[a] sex offender shall . . . keep the registration current . . . in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student"). Rather, the facts only provide that Defendant ultimately was located by authorities nine months later in Belize, (*see* ECF No. 47, Ex. 1 ¶ 14), which is not a "jurisdiction involved" under SORNA, *see* 42 U.S.C. § 16911(10) (providing the covered "jurisdiction[s]" for purposes of SORNA).

The Government bears the burden of demonstrating that Defendant had a duty to update his West Virginia registration in or about May of 2014, as alleged in the Indictment. *See, e.g.*, *United States v. Ismail*, 97 F.3d 50, 55 (4th Cir. 1996) ("Although the United States may rely on inferences and circumstantial evidence, it 'nevertheless must establish proof of each element' of the crime 'beyond a reasonable doubt.'" (quoting *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996))). However, absent some evidence that Defendant remained in this jurisdiction following his change of residence or employment, the Court cannot determine that West Virginia remained a "jurisdiction involved," such that Defendant held a duty to update his registration in this State. *See, e.g.*, *Bailey*, 2014 WL 534193, at *6 ("After [the defendant] moved to [the new

jurisdiction] and no longer resided in West Virginia, the only jurisdiction that met the requirements of § 16913(c) was [the new jurisdiction].”). If Defendant left this jurisdiction immediately following May 8, 2014 and did not intend to return, then West Virginia was no longer a "jurisdiction involved" as of that date and Defendant was under no obligation to update his registration in this former jurisdiction. *See, e.g.*, *id.*

Despite this record, the Government urges the Court to find that Defendant had a duty to update his West Virginia registration following his change of residency and employment in May of 2014. In particular, the Government argues that "Defendant triggered requirements to update his registration as to his residence at the moment that" he left the Lifeway Center and ended his employment and "[a]t each of those moments West Virginia was a jurisdiction involved." (ECF No. 49 at 16.) The factual inadequacies in this case foreclose this argument to the extent the Government asserts that West Virginia remained a jurisdiction involved due to Defendant's change in employment status. The record provides only that Defendant did not return to work after May 8, 2014. (*See* ECF No. 47, Ex. 1 ¶ 11.) The record does not, however, provide any information regarding either when Defendant intended to change his employment status or when he formally ended his employment relationship in West Virginia. (*See* ECF No. 47, Ex. 1 (constituting the parties' Joint Stipulation of Facts).) Indeed, Defendant may have intended to merely travel overseas and return to work, but only formed the intention to leave this employment once outside of the United States. *Cf. United States v. Lunsford*, 725 F.3d 859, 861 (8th Cir. 2013) (finding that the defendant's change of residency did not occur while he was in his former jurisdiction because he "did not change his residence and trigger a reporting obligation until after he left the United States"). Ultimately, the factual deficiencies relating to Defendant's employment preclude any

determination by the Court as to when exactly Defendant changed his employment status. *See, e.g.*, *United States v. Anderson*, 391 F. App'x 255, 256 (4th Cir. 2010) ("[T]he Government must prove all of the elements [of the charged offense] beyond a reasonable doubt . . . .").

The Court is similarly not persuaded by the Government's argument to the extent it pertains to Defendant's change of residence. SORNA defines the term "resides" as "the location of the individual's home or other place where the individual habitually lives." 42 U.S.C. § 16911(13). Once Defendant moved out of his residence in West Virginia, that residence was no longer his home or where he habitually lived. Instead, absent any evidence that Defendant then stayed at any location in West Virginia, Defendant no longer had a home or other place where he habitually lived in West Virginia. *See United States v. Murphy*, 664 F.3d 798, 805 (10th Cir. 2011) (Lucero, J., dissenting) ("[I]f the halfway house [in Utah] was no longer [the defendant's] residence, then Utah was no longer the jurisdiction where the offender resides . . . because the state would not contain any home or other place where [the defendant] habitually lives." (citations omitted)). In short, based on this sparse record, the Government has failed to provide any evidence that Defendant resided in West Virginia after he left his residence. The Government has therefore failed to demonstrate that Defendant had an obligation under SORNA to update his West Virginia registration due to his May 2014 change of residence. *See* 42 U.S.C. § 16913(a) ("A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides . . . .").

In essence, the Government argues that the Court should interpret the present language of Section 16913(a) and (c) in the same manner as the pre-SORNA federal registration requirement under the now-repealed 42 U.S.C. § 14071(b)(5)—namely, that an offender "shall report [a]

25

change of address to the responsible agency in the State the person is leaving, *and* shall comply with any registration requirement in the new State of residence." 1997 Act, Pub. L. No. 105-119, 111 Stat. 2461 (emphasis added) (codified at 42 U.S.C. § 14071(b)(5)). However, Congress elected to amend this statutory language through SORNA to provide for a registration or updating requirement only in the present tense—*i.e.*, where an offender resides, works, or is a student, *see* 42 U.S.C. § 16913(a)—and *not* in the past tense—*i.e.*, where an offender resided, worked, or was a student, *see id.* The Court finds that this substantive amendment forecloses the Government's assertion that the current SORNA registration language in Section 16913(a) and (c) is identical in practice to the demonstrably different pre-SORNA registration language under the now-defunct 42 U.S.C. § 14071(b)(5). *See, e.g.*, *Nalley v. Nalley*, 53 F.3d 649, 652 (4th Cir. 1995) ("When the wording of an amended statute differs in substance from the wording of the statute prior to amendment, we can only conclude that Congress intended the amended statute to have a different meaning." (citation omitted)); *cf.* H.R. Rep. No. 109-218 (2005), 2005 WL 2210642 (providing the following statement in the House report associated with SORNA regarding one way this law addresses previous problems with ensuring offender compliance with reporting requirements: "[I]f the sex offender either moves to a new State, works in a new State, or attends school in a new State, *the new State is required to notify the other State* that the sex offender is doing so in that State." (emphasis added)). *See generally id.* (providing the following statement in the House report associated with SORNA: "Given the lack of basic uniformity and effective operation among the various States in administering sex registry programs, there is a need to re-evaluate basic requirements for such registries, particularly the need to ensure sex offender compliance with registration requirements when a sex offender changes residence, employment or student status.").

26

The Court declines the Government's invitation to interpose in SORNA a requirement that an offender update his registration on the way out of a jurisdiction when such a requirement is clearly lacking from the language under Section 16913(a) and (c).

For the foregoing reasons, the Court finds that the Government has failed to meet its burden of showing that West Virginia was a jurisdiction involved after Defendant's change of residence and employment in May 2014. As noted above, an essential element of the charged offense under 18 U.S.C. § 2250(a) is that the defendant knowingly failed to register or update their registration as a sex offender in a jurisdiction involved "under 42 U.S.C. § 16913(a)." *United States v. Gould*, 568 F.3d 459, 463 (4th Cir. 2009). In this matter, the Government has failed to provide any evidence demonstrating that Defendant was required to update his West Virginia registration "[i]n or about May of 2014," as alleged in the Indictment. (*See* ECF No. 6 (the Indictment); ECF No. 47, Ex. 1 (the parties' Joint Stipulation of Facts).) The Court therefore finds that the Government has failed in its burden to provide sufficient evidence that Defendant committed the charged offense. Accordingly, the Court finds as a matter of law that the Government's evidence is insufficient to establish Defendant's factual guilt on the charge in the Indictment, *see United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003) ("A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 144 (1986))), and Defendant is entitled to an acquittal of this charge.[4]

---

[4] In the Motion, Defendant also argues that he is entitled to an acquittal because "[t]he Government's interpretation of the interstate travel element in 18 U.S.C. § 2250 renders the statute unconstitutional." (ECF No. 44 at 10–13.) As the Court finds that the Government has failed to demonstrate that West Virginia remained a jurisdiction involved following the May 2014 triggering events, it does not reach Defendant's additional argument regarding the interstate-nexus requirement in 18 U.S.C. § 2250.

### IV. Conclusion

For the reasons provided above, the Court **GRANTS** the Motion. (ECF No. 44.) Accordingly, the Court **ACQUITS** Defendant of the charge in the single-count Indictment. (ECF No. 6.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:        February 8, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

28